NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

_____

|  |  |  |
|---|---|---|
| Latisha CAMPBELL, | : | |
|  | : | |
| Plaintiff, | : | |
|  | : | |
| v. | : | Civil No. 17-05479 (RBK) |
|  | : | |
| COMMISSIONER OF SOCIAL SECURITY, | : | **OPINION** |
|  | : | |
| Defendant. | : | |

_____

**KUGLER**, United States District Judge:

**THIS MATTER** comes before the Court upon the appeal of Plaintiff Latisha Campbell for review of the final decision of the Commissioner of Social Security. (Doc. No. 1). The Commissioner denied Plaintiff's application for Social Security Disability Insurance ("SSID") benefits, finding that Plaintiff was not disabled as defined by the Social Security Act. For the reasons set forth below, the decision of the Commissioner is **VACATED**, and the Court will **REMAND** this matter to the Administrative Law Judge ("ALJ") for further proceedings consistent with this Opinion.

## I.    FACTS AND PROCEDURAL HISTORY

### 1.  Factual Background

Latisha Campbell is a married thirty-eight-year-old woman with four children who range from fifteen months to twenty-five years in age. R. 28. She struggles with various mental and physical conditions and relies on her family to assist her with managing her personal care needs such as taking her medication. R. 26, 28. Despite her ailments, she can do some household work. For example, she testified that she can put dishes in the dishwasher, do some laundry, shop online, and prepare meals.

Plaintiff suffers from several ailments and conditions that underly her application for SSI benefits. R. 21–22. Specifically, she alleges disability due to irritable bowel syndrome ("IBS"), gastroesophageal reflux disease ("GERD") and headaches/temporomandibular joint dysfunction ("TMJ"). She also has several physical conditions. She alleges difficulty with kneeling, crouching and handling, as well as back pain. She further claims she suffers from a cough, bronchitis, hyperemesis gravidarum, and an upper respiratory infection. Plaintiff also has several mental conditions, including major depression disorder and an anxiety disorder.

Plaintiff has a lengthy medical history relating to her abdominal and gastritis issues. She has tried several medications to combat conditions related to IBS as well. R. 22. In 2014, episodes of cramping and erratic bowel movements led to gall bladder surgery and a cholecystectomy. She also has undergone treatment relating to abdominal pain going back to 2009. She started treatment for esophageal reflux in 2011. She also now treats with a gastroenterologist from her IBS.

Plaintiff has undergone various treatment for her mental impairments as well. Starting in 2011, she took several medications for depression and anxiety. R. 30. Her depression worsened in 2012 following the birth of a child. R. 31. She struggled with both sleep loss, anxiety, and post-partum depression. She revealed that she did not get enough help at home: she thought her

husband should do more to assist her during these times. R. 37. From 2012 onward, she underwent treatment and medication regarding these conditions. Relatedly, he now undergoes professional treatment regularly. For example, she sees a psychiatrist once every two to three weeks. R. 30. She also sees a therapist weekly. *Id.*

## 2. Procedural History

On February 8, 2013, Plaintiff Latisha Campbell filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning May 16, 2011. The claim was denied initially on September 5, 2013, and again upon reconsideration on January 6, 2014. Upon request, Plaintiff testified at a hearing on January 12, 2016 in Pennsauken, New Jersey. The Administrative Law Judge permitted the medical record to remain open for two weeks following the hearing. Plaintiff submitted additional medical records on February 8, 2016. On March 1, 2016, the ALJ issued a decision that found Plaintiff was not disabled from May 16 through the date of the decision. R. 19–41. Plaintiff sought review from the Appeals Council. R. 12. The Appeals Council concluded that there were no grounds for review. R. 1. Plaintiff then filed this action.

## 3. ALJ's Determination

The ALJ found that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2016. Next, at step two, he found she had not engaged in substantial gainful activity since May 16, 2011, the alleged onset date. At step three, the ALJ found that Plaintiff had the following severe impairments, anxiety disorder and major depressive disorder. R. 21. None of these impairments or combination of impairments met or medically equaled the severity of one of the listed impairments under the relevant law. R. 26.

Between step three and four, the ALJ performed a Residual Functional Capacity ("FRC"). R. 30. There, the ALJ found that Plaintiff could perform a full range of work at all exertional levels but with the following non-exertional limitations: able to understand, remember and carry out simple, routine, and repetitive tasks in a work environment free of fast paced production requirements involving only simple, work related decisions with few, if any, work place changes. In addition, the RFC determined that Plaintiff can work for two hours before needing a break, occasional contact with supervisors and co-workers in proximity, but no on joint or shared tasks and no contact with the public. *Id.* The ALJ then considered Plaintiff's age, education, work experience, and RFC and found that significant jobs did exist in the national economy that she can perform. R. 40. The ALJ then concluded that Plaintiff was not disabled as defined by the Social Security Act. R. 41.

The matter before the Court focuses predominantly on the ALJ's RFC determination.


## II.    LEGAL STANDARD

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial

evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III.  DISCUSSION

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that she was not engaged in "substantial

gainful activity" for the relevant time period. 20 C.F.R. § 404.1572. Second, the claimant must

demonstrate that she has a "severe medically determinable physical and mental impairment" that

lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20

C.F.R. § 404.1509. Third, either the claimant shows that her condition was one of the

Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the

analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not

equivalent to a listed impairment, the claimant must show that he cannot perform his past work,

and the ALJ must assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. §

404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e).

If the claimant meets her burden, the burden shifts to the Commissioner for the last step.

*Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other

available work exists that the claimant is capable of performing based on her RFC, age,

education, and work experience. *Id*.; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make

"an adjustment to other work," she is not disabled. See 20 C.F.R. § 404.1520(a)(4)(v).

Between steps three and four, the ALJ is required to assess *all* of the claimant's

impairments—even ones that are not "severe"—in combination, when making the RFC

determination. *See* 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically

determinable impairments of which we are aware, including your medically determinable

impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when

we assess your residual functional capacity."). SSR 96–8p is clear about what the ALJ must

consider:

> In assessing RFC, the adjudicator *must* consider limitations and
> restrictions imposed by *all* of an individual's impairments, even
> those that are not "severe." While a "not severe" impairment(s)
> standing alone may not significantly limit an individual's ability to

do basic work activities, it may—when considered with limitations
or restrictions due to other impairments—be critical to the outcome
of a claim. For example, in combination with limitations imposed
by an individual's other impairments, the limitations due to such a
"not severe" impairment may prevent an individual from
performing past relevant work or may narrow the range of other
work that the individual may still be able to do.

SSR 96–8p (emphasis added); *see also Soboleski v. Comm'r of Soc. Sec.*, 2015 WL 6175904, at

*2 (D.N.J. Oct. 20, 2015) (explaining that a finding of non-severity "does not obviate the need

for a separate analysis of how Plaintiff's impairment affects her RFC"). The ALJ must therefore

consider all relevant evidence when determining an individual's RFC.

In this case, Plaintiff argues that substantial evidence in the record establishes that she is

entitled to social security benefits. Pl. Br. [Doc. No. 10] at 9. She argues that the ALJ's final

decision was not based on substantial evidence in the record and thus requests the Court to

remand that decision and order a new hearing and a new decision. *Id.* Plaintiff presents two

central challenges to the ALJ's decision: (1) the RFC assessment is based on irrelevant

considerations, and (2) the Commissioner did not satisfy the burden of proof at step-five.

Because the Court agrees with the Plaintiff on the first issue, it does not reach the second.


**The RFC is not based on substantial evidence**

At first glance, the ALJ's decision appears to carefully consider much of the Plaintiff's

medical history. The determination includes a long recitation of the Plaintiff's medical history,

R. 26–40, detailing various expert reports as well as pertinent treatments. Plaintiff focuses much

of her argument on the ALJ's evaluation of the increased symptomology in 2015. Pl. Br. at 15.

There, the ALJ determined that Plaintiff's increased symptomatology did not stem from her

mental or physical impairments. Instead, the ALJ explained that,

[M]uch of claimant's increased symptomatology during the period at issue arose

from her issues with raising four children, two of them under the age of four, with

little consistent assistance from family members or her husband. . . . I find that

many of her complaints and issues are typical of a mother with young children

and that when she took her medications and received some assistance from her

husband, her symptoms improved.  R. 38.

Plaintiff argues that the ALJ's RFC determination is improperly based on "lay-judgment" rather than substantial medical evidence.  Pl. Br. at 21.

The law is well-established in the area of an ALJ's RFC determination.  The determination of a claimant's disability is reserved for the ALJ.  20 C.F.R. § 404.1527(d)(1). However, the ALJ is responsible for "evaluat[ing] all relevant evidence and to explain the basis for his or her conclusions." *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  If evidence is rejected, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981).  The explanation need not be comprehensive; "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).  "Where inconsistency in evidence exists, the ALJ retains significant discretion in deciding whom to credit." *Ganges v. Commisioner of Social Sec.*, No. 17-cv-1982, 2018 WL 5342717, at *11 (D.N.J. Oct. 29, 2018) (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)).  However, the ALJ "cannot reject evidence for no reason or for the wrong reason." *Plummer*, 186 F.3d at 429 (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)).

Here, the ALJ's decision did not adequately provide a "thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations" including "a resolution of any inconsistencies in the evidence as a whole [which] set[s] forth a logical explanation of the individual's ability to work" as required when the ALJ rejects the subjective credibility of an applicant. SSR 95–5p, 1995 WL 670415, at *2 (October 31, 1995); *see also Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999). While the ALJ is permitted to give less weight to testimony that contradicts the medical record, the conclusion to discount Plaintiff's symptomology appears to violate the *Cotter* Doctrine because it is more rooted in subjective bias rather than objective analysis. See *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981).

Most obviously, the ALJ stated, in a conclusory fashion, that Plaintiff's increased symptomology was the result of her status as a new mother. While evidence exists in the record of Plaintiff's difficulty with childcare, the ALJ acted far outside of his authority to provide a medical *conclusion* that being a new mother *caused* her purported medical symptoms. This Court simply rejects such a vague and seemingly stereotypical reference. Such analysis falls well short of substantial evidence to support a disability determination. *See Monsour Medical Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir.1986) ("[s]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. . . .") (internal citations omitted).

Plaintiff correctly points out another area where the ALJ's analysis appears to be lacking. Dr. Theodore Brown examined the Plaintiff on September 15, 2015 and concluded that Plaintiff had marked limitations in her ability interact with others, including supervisors or potential

coworkers.  Dr. Brown also found that Plaintiff had no limitation in understanding, remembering, or carrying out instructions.  The ALJ gave little weight to this mental determination because Brown did not consider Plaintiff's subjective complaints.  R. 39.  Then, inexplicably, the ALJ assigned little weight "to the remainder of his opinion" because he found "that the claimant is limited to a moderate extent in her social functioning as reflected in Finding 4 above."  R. 39.  Unpacking this logic, the ALJ appears to say, Dr. Brown did not consider *something* in one area therefore he cannot be right about *anything* in another.  Similarly, in assigning "great weight" to the State agency psychological consultants, the ALJ merely explained that their determinations are "consistent with the medical record as a whole."  R. 39.  The ALJ does not instruct the Court just where in the record these consultants arrive at their conclusions.  The conclusion *is* simply because it *is*.

This Court rejects this kind of circular and narrow analysis in credibility determinations.  ALJ's cannot merely recite the medical record and offer short conclusory statements in making a credibility determination.  This kind of explanation falls short of the Third Circuit's guidance in cases like *Cotter* and *Fargnoli*.   Again, when making a credibility determination, the ALJ must "evaluate all relevant evidence and to explain the basis for his or her conclusions."  *Fargnoli*, 247 F.3d at 42.  Relevant evidence is not conjecture based upon antiquated notions of stress inherent in raising children; nor is relevant evidence a random sampling of subjective complaints to support non-medical conclusions.  Instead, an ALJ must provide an explanation that considers probative evidence so that a reviewing court can determine whether the reasons for rejection were improper.  The ALJ here has not provided this Court the guidance the law requires.

Because the RFC determination lacks the necessary analytical foundation, this Court

vacates the ALJ's decision and remands the case back to the ALJ for reconsideration.

Accordingly, this Court will not consider the merits of Plaintiff's step-five challenge.


IV.    **CONCLUSION**

For the reasons discussed above, this Court vacates the ALJ's determination and remands

the case back for reconsideration.


Dated:   1/2/2019                                                    s/ Robert B. Kugler
                                                                     ROBERT B. KUGLER
                                                                     United States District Judge